# EXHIBIT 3

## THE *EPIC* AND *CARR* CASES HAVE THE SAME CAUSES OF ACTION RESTING ON THE SAME FACTUAL ALLEGATIONS TO MEET THE SAME NECESSARY ELEMENTS

| ALLEGATION | *EPIC* COMPLAINT | *CARR* COMPLAINT |
|---|---|---|
| **Google's Monopoly Power Over the Merchant Market for Mobile Operating Systems** | | |
| The "Merchant Market for Mobile OS" is comprised of mobile OS that original equipment manufacturers ("OEMs") can license for installation on the smart mobile devices they manufacture. | ¶48 | ¶26 |
| Google has monopoly power over OEMs in the Merchant Market for Mobile OS who want to install an OS because the Android OS is the only commercially viable option. The Android OS is installed on over 95% of mobile devices using a merchant mobile OS (*i.e.,* not a proprietary OS like Apple's iOS). | ¶13, ¶52, ¶72 | ¶29 |
| Other available OS are not viable alternatives to the Android OS because, among other problems, they do not support high-quality and successful mobile apps. | ¶58, ¶72 | ¶34-35, ¶50 |
| Google's behavior is not constrained at the mobile device level because consumers face switching costs if they change OS and therefore tend to be locked-in to the OS they choose. | ¶74-77 | ¶52-56 |
| **There Is a Separate Android App Distribution Market** | | |
| The "Android App Distribution Market" is the existing market for the distribution of Android-compatible apps to mobile device users. | ¶62 | ¶40 |
| **Google Has Monopoly Power Over the Android App Distribution Market** | | |
| Google has monopoly power over the Android App Distribution Market, with more than 90% of app downloads processed through the Google Play Store and the Play Store being pre-installed on nearly all Android devices. | ¶12, ¶69-71, ¶105 | ¶3, ¶48-49 |
| Google uses its monopoly power over the distribution of Android-compatible apps to impose a 30% tax every time an app is sold or content is purchased within the app, which is a far higher commission than a competitive market would permit. | ¶5, ¶73 | ¶51 |

| ALLEGATION | *EPIC* COMPLAINT | *CARR* COMPLAINT |
|---|---|---|
| **Google's Anticompetitive Conduct in the Android App Distribution Market** | | |
| Google's contracts and technology force the distribution of nearly all Android-compatible apps to occur through the Google Play Store.  For example, Google bundles the Play Store with other Google services through a Mobile Application Distribution Agreement ("MADA") and then conditions licensing for those services on a manufacturer's agreement to pre-install and prominently display the Play Store icon. | ¶14-17, ¶57, ¶81-83 | ¶5, ¶60-61 |
| Google prevents app developers from using Google Play Store to distribute any app that would permit downloading apps through something other than Google Play Store through the Google Play Developer Distribution Agreement ("DDA"). | ¶18, ¶89-91 | ¶6, ¶65-67 |
| Google conditions app advertisement through Google channels on a developer's agreement to distribute its app through the Play Store. | ¶18, ¶93 | ¶6, ¶69 |
| Google prevents or inhibits consumers from being able to download apps from developer websites through technological barriers (such as preventing automatic updates or downloads through the "Advanced Protection Program") and unnecessary warnings. | ¶19, ¶84, ¶94, ¶96-101 | ¶7, ¶63, ¶72-76 |
| **The Anticompetitive Harm Caused by Google's Conduct in the Android App Distribution Market** | | |
| Absent Google's anti-competitive conduct, other distribution applications would be available to consumers, exposing them to cheaper, more innovative distribution models. | ¶92 | ¶68 |
| Google engages in anti-competitive behavior in the app distribution market to stifle consumer choice and competition.  Absent Google's behavior, Android users could freely and easily download apps from other sources like developers' websites. | ¶20, ¶95, ¶102-103 | ¶71, ¶77 |

| ALLEGATION | *EPIC* COMPLAINT | *CARR* COMPLAINT |
|---|---|---|
| Google's behavior causes the following harms:<br>(1) the forced display of Google services prevents OEMs from creating innovative, tailored home screens for consumers;<br>(2) prevents competition from other app distributors;<br>(3) hinders app developers' ability to innovate with different distribution platforms and cements Google's ability to use consumer data to drive its own revenue generating activities;<br>(4) forces developers and/or consumers to bear a 30% tax on Google Play Store and/or Google Play Billing transactions; and<br>(5) forces consumers to find and/or purchase apps in a monopolized store instead of allowing competing distribution platforms to present new and innovative content differently | ¶106-111 | ¶62, ¶80-85; ¶106 |
| **There Also Exists an Android In-App Payment Processing Market** | | |
| The "Android In-App Payment Processing Market" is the market for the processing of payments for the purchase of digital content consumed within Android apps | ¶114 | ¶89 |
| **Google Has Monopoly Power Over the Android In-App Payment Processing Market** | | |
| Google uses the DDA and its Developer Program Policies to tie a developer's ability to distribute an app through the Google Play Store to an agreement to exclusively use Google Play Billing to process in-app purchases. This effectively transfers Google's monopoly power over the Android App Distribution Market into monopoly power over the Android In-App Payment Processing Market. | ¶23, ¶123, ¶125-126 | ¶10, ¶87, ¶97-99 |
| **Google's Anticompetitive Conduct in the Android In-App Payment Processing Market** | | |
| Google collects payment first and extorts a 30% tax on the transaction, which is often 10 time higher than the transaction fee associated with other payment options | ¶24, ¶124 | ¶11, ¶96 |
| By inserting itself into every transaction, Google is able to collect personal user information for use in its own advertising services and mobile app business | ¶25 | ¶12 |

3

| ALLEGATION | *EPIC* COMPLAINT | *CARR* COMPLAINT |
|---|---|---|
| **The Anticompetitive Harm Caused by Google's Conduct in the Android In-App Payment Processing Market** | | |
| Absent Google's conduct, app developers could offer consumers a choice for payment processing, avoid Google's 30% tax in favor of a commission set by the market and determine for themselves what should be done with consumer data | ¶26, ¶115, ¶127 | ¶13, ¶88 |
| Google's behavior causes the following harms: <br>(1) consumers cannot choose between payment processors who might be cheaper or may innovate with in-app purchases; <br>(2) inhibits a developer's ability to provide direct customer service; <br>(3) inhibits a developer and consumer's ability to decide what information to share, while at the same time using that information to enhance Google's own revenue streams; and <br>(4) the 30% tax on all purchases harms consumers making such purchases and deprives developers of revenue otherwise available to innovate and/or develop new games. | ¶131-134 | ¶101-104, ¶107 |