# EXHIBIT A

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| GARY FEITELSON, a Kentucky resident, and DANIEL MCKEE, an Iowa resident, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:14-cv-02007-BLF<br><br>**EPIC GAMES, INC.'S OPPOSITION TO ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** |

Pursuant to Civil Local Rule 3-12(e), Epic Games, Inc. ("Epic") submits this Opposition to Google LLC's Administrative Motion To Consider Whether Cases Should Be Related ("Motion") (Dkt. 56). In the Motion, Google LLC ("Google") argues that three recently filed cases pending before Judge Donato, *Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD ("*Epic-Google*") (filed August 13, 2020), *Carr v. Google LLC et al.*, Case No. 20-cv-05761-JD ("*Carr*") (filed August 15, 2020), and *Pure Sweat Basketball, Inc. v. Google LLC et al.*, Case No. 20-cv-05792-JD ("*PSB*") (filed August 17, 2020), should be related to *Feitelson v. Google, Inc.*, Case No. 5:14-cv-02007-BLF ("*Feitelson*"), a case that this Court dismissed at the pleading stage ***over five years ago, back in 2015*** (Dkt. No. 52).

When Google filed the Motion, *Epic-Google*, *Carr*, and *PSB* (together the "Android App Cases") were assigned to Judge Donato (*Epic-Google*), Judge Chen (*PSB*) and this Court (*Carr*); all three cases now have been related to *Epic-Google* before Judge Donato. (*See* Related Case Order, *Epic-Google*, Case No. 3:20-cv-05671-JD, Dkt. 42 (N.D. Cal. Sept. 9, 2020); Related Case Order, *Epic-Google*, Case No. 3:20-cv-05671-JD, Dkt. 46 (N.D. Cal. Sept. 10, 2020).) Epic respectfully submits that the Android App Cases do not meet the Civil Local Rule 3-12 criteria to be related to *Feitelson*. The Android App Cases involve different conduct resulting in different anti-competitive harm in different antitrust markets than did *Feitelson*. Moreover, relating the Android App Cases to *Feitelson* would not save any judicial (or other) resources, would not prevent duplication of any efforts, and would not mitigate any risk of conflicting results. There is no such risk—*Feitelson* was dismissed more than five years ago on a Rule 12 motion just ten months after the action was filed, primarily on standing grounds unique to the plaintiffs and allegations that are inapplicable to the Android App Cases.

**ARGUMENT**

"An action is related to another when: (1) The actions concern substantially the same parties, property, transaction or event; and (2) It appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). Neither prong is satisfied here.

I. ***Feitelson* and the Android App Cases Do Not Concern Substantially the Same Parties, Property, Transaction or Event.**

*Feitelson* was and the Android App Cases are antitrust actions against Google. The similarities end there; plaintiffs in the two sets of cases allege markedly different harms within completely distinct antitrust markets.

In the Android App Cases, plaintiffs define relevant product markets for Android app distribution and Android in-app payment processing. (*See* Mot., Rocca Decl., Ex. A, *Epic-Google* Compl. ¶¶ 62-66, 114-20; Mot., Rocca Decl., Ex. B, *Carr* Compl. ¶¶ 40-43, 89-91; Mot., Rocca Decl., Ex. C, *PSB* Compl. ¶¶ 124-27, 131-34.) By contrast, the *Feitelson* First Amended Complaint ("FAC") focused on the market for "general Internet search conducted on desktop computers, laptops, and handheld devices via the Google search engine or one of its general search engine rivals, such as Bing" and "general Internet search conducted on smartphones and tablets". (*Feitelson* FAC ¶ 75, Dkt. No. 31.) This difference is fundamental, as the contents and bounds of a product market go to the core of an antitrust case. The only immediate relationship between these markets is that Google happens to monopolize all of them.

Just as fundamentally, the Android App Cases posit completely different theories of anti-competitive harm than did *Feitelson*. In the Android App Cases, plaintiffs argue that Google's anti-competitive conduct enables it to foreclose competition among app distributors and payment processors and to impose a supra-competitive tax on paid apps and in-app purchases. (*See* Mot., Rocca Decl., Ex. A, *Epic-Google* Compl. ¶¶ 106-11, 131-34; Mot., Rocca Decl., Ex. B, *Carr* Compl. ¶¶ 80-85, 101-04; Mot., Rocca Decl., Ex. C, *PSB* Compl. ¶¶ 95, 103-10.) The core harm that was alleged in *Feitelson*, by contrast, had nothing to do with *apps*; rather, it was that plaintiffs overpaid for Android *phones* because Google's misconduct secured its status as the default search engine, depriving OEMs of revenue from selling the default search engine slot on their devices to Google competitors. (*Feitelson* FAC ¶ 140, Dkt. No. 31.)

Google asks the Court to overlook these differences on the ground that both *Feitelson* and the Android App Cases "allege claims against Google based on overlapping transactions—Google's contracts with OEMs", and purportedly have "overlapping theor[ies] of anticompetitive

2

harm: Google's use of MADAs to purportedly foreclose competition in the markets alleged in each complaint." (Mot. 3.) But virtually every antitrust case alleges foreclosure of competition in a relevant market, and in drawing this high-level parallel, Google glosses over the fundamental divergence outlined above. The *Feitelson* plaintiffs alleged that agreements with OEMs, in and of themselves, maintained Google's monopoly in Internet search, allegedly leading to higher prices of Android phones. (*Feitelson* FAC ¶¶ 35-42, 82, Dkt. No. 31.) By contrast, the Android App Cases allege that Google's agreements with OEMs, together with technical restrictions within the Android OS and contractual restrictions imposed in Google's agreements with app developers—none of which was at issue in *Feitelson*—foreclose competition in distribution of Android-compatible apps, resulting in (among other things) higher prices of apps and in-app purchases. (*See* Mot., Rocca Decl., Ex. A, *Epic-Google* Compl. ¶¶ 80-111, 125-34; Mot., Rocca Decl., Ex. B, *Carr* Compl. ¶¶ 58-85, 95-104; Mot., Rocca Decl., Ex. C, *PSB* Compl. ¶¶ 51, 65-69, 77-86, 103-10.) *Cf. Adobe Sys. Inc. v. A & S Elecs., Inc.*, 2016 WL 9105173, at *3 (N.D. Cal. Oct. 13, 2016) ("[party] has failed to persuade the Court that . . . relating . . . the cases at issue is warranted" in part because there are "different software products . . . at issue in each case"). Thus, the two sets of cases arise from different facts concerning different products, foreclosing a different set of competitors and resulting in different anti-competitive effects in different antitrust markets.

II. **There Will Be No Burdensome Duplication of Labor and Expense or Conflicting Results if the Android App Cases Are Heard by a Different Judge Than *Feitelson*.**

The Android App Cases should not be related to *Feitelson* because relation offers no judicial or other efficiency and the Android App Cases pose no risk of duplicating any effort or producing conflicting results with *Feitelson*.[1]

---

[1] In a footnote, Google half-heartedly suggests that "Epic . . . agreed to litigate disputes with Google 'exclusively' . . . in the San Jose Division for federal court cases". (Mot. 2 n.3.) This is wrong. Section 16.8 of the Google Play Developer Distribution Agreement provides that "You

3

*Feitelson* was filed more than six years ago.  (*See* Dkt. No. 1.)  The Court did not rule on any discovery disputes or, save dismissing the action, issue any rulings on the case's merits.  More than five years ago, *Feitelson* was dismissed, primarily on standing grounds unique to the allegations in that case.  *Feitelson. v. Google, Inc.*, 80 F. Supp. 3d 1019 (N.D. Cal. 2015).  The only activity in *Feitelson* since April 2015 is Google's present Motion and responses thereto.  (*See* Dkt. Nos. 55-58)  Google nonetheless argues that "[b]ecause this Court . . . also decided [*Feitelson*], there may be efficiencies in relating all four actions before this Court".  (Mot. 5.)  But Google does not specify any such "efficiencies".  And because *Feitelson* is not an active matter, no efficiencies are possible. *See Carlyle Fortran Tr. v. NVIDIA Corp.*, 2008 WL 4717467, at *1 (N.D. Cal. Oct. 24, 2008) ("Given the current inactive or on-appeal status of the allegedly related cases . . . the Court is not concerned by the possibilities of duplicative labor or of conflicting results."); *Storrer v. Paul Revere Life Ins.*, 2008 WL 667402, at *1 (N.D. Cal. Mar. 6, 2008) (declining to relate cases where, "[i]rrespective of the amount of factual or legal overlap between the two cases—which is disputed by the parties . . . the [earlier-filed] case has been entirely resolved.").  Clearly, because *Feitelson* was dismissed at the pleading stage, relating the Android App Cases to that case would not produce efficiencies with respect to discovery.  Likewise, there is no risk that the Android App Cases will produce a conflicting

---

and Google further agree to submit to the exclusive jurisdiction of the federal or state courts located within the county of Santa Clara, California" (available at https://play.google.com/about/developer-distribution-agreement.html).  The United States District Court for the Northern District of California, in its entirety, is the federal "court" for Santa Clara, California, and thus has jurisdiction over this dispute; and Google's contract of adhesion is silent as to any particular division thereof.  "[T]here is no federal court that sits only in Santa Clara County.  The Northern District of California has three divisions, but parties in [certain] actions have no right to venue in a particular division."  *PQ Labs, Inc v. Yang Qi*, 2012 WL 2061527, at *12 (N.D. Cal. June 7, 2012) (citing Civil L.R. 3-2).  Indeed, the Northern District of California has determined that antitrust cases "will be assigned on a district-wide basis".  Civil L.R. 3-2(c).

decision. The Court's dismissal in *Feitelson*—the only decision in the case—focused on plaintiffs' lack of standing and the tenuous connection between the market alleged in that case (Internet search) and the antitrust injury alleged by plaintiffs there (increase in the price of Android phones). *Feitelson*, 80 F. Supp. 3d at 1026-30, 1031-32. The Android App Cases allege completely different harms in entirely different markets. In any event, to the extent the single ruling in *Feitelson* may be relevant, "such ruling[ is] now a matter of settled public record and the effect of such ruling[] on this matter can be fully vetted without relating the cases". *Paul Revere*, 2008 WL 667402, at *1.

## CONCLUSION

For the foregoing reasons, the Android App Cases do not meet either of the Civil Local Rule 3-12 criteria to be related to *Feitelson*. Accordingly, the Court should not relate *Epic-Google*, *Carr*, or *PSB* to *Feitelson*.

Dated: September 14, 2020    Respectfully submitted,

By:  *Paul J. Riehle*
———————————————

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**
Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for* **EPIC GAMES, INC.**